UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
STEVE KOPCHIK III,                              :
             Plaintiff,                          :
                                                        :    **OPINION AND ORDER**
v.                                              :
                                                        :    17 CV 5300 (VB)
TOWN OF EAST FISHKILL, NEW YORK,                :
             Defendant.                          :
--------------------------------------------------------------x

Briccetti, J.:

Plaintiff Steve Kopchik III brings this action under the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), and the New York State Human Rights Law ("NYSHRL"), claiming the Town of East Fishkill (the "Town") retaliated against him because he filed a charge of age discrimination and discriminated against him because of an alleged disability.

Now pending is the Town's motion to dismiss pursuant to Rule 12(b)(6). (Doc. #8).

For the following reasons, the motion is GRANTED.

The Court has subject matter pursuant to 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

In deciding the pending motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint, and draws all reasonable inferences in plaintiff's favor, as summarized below.[1]

The Town employed plaintiff as Supervisor of Buildings and Grounds, a civil service position. On January 7, 2015, plaintiff filed a charge of age discrimination (the "Charge") with the Equal Employment Opportunity Commission ("EEOC") against the Town and Town

---

[1] After the motion to dismiss was filed, the Court sua sponte granted plaintiff an opportunity to file an amended complaint. (Doc. #9). Plaintiff declined to do so. (Doc. #10).

Supervisor John Hickman. (Gould Aff. Ex. 1). On April 15, 2015, the EEOC directed the Town to respond to the Charge by May 15, 2015. On August 31, 2015, the EEOC issued a Notice of Right to Sue directing plaintiff to file any lawsuit related to the Charge by November 30, 2015. Plaintiff never filed suit.

On January 28, 2016, the Town passed a resolution (the "Resolution") abolishing all of the Town's buildings and grounds maintenance worker positions, including plaintiff's. Plaintiff alleges the Town Board passed the Resolution "at the recommendation of Supervisor Hickman" (Compl. ¶ 14). Plaintiff also alleges the Town Board passed the Resolution only after "it became clear to the Town . . . that [plaintiff] was at that point precluded from commencing" a lawsuit based on the Charge. (Id.).

The Resolution, which sought to consolidate the duties of the abolished positions into the Highway Department, authorized the Highway Superintendent to rehire the terminated employees as laborers and motor equipment operators. The Resolution also authorized the Town Supervisor to recommend to the Town Board a resolution that plaintiff be rehired as a motor equipment operator.

Plaintiff alleges at the time of the Passage of the Resolution, the Town and Supervisor Hickman were aware plaintiff did not possess the appropriate license for a motor equipment operator.

Plaintiff further alleges the Town was aware of an injury he suffered while working on October 16, 2014, which resulted in his hospitalization for over a week and caused plaintiff an orbital fracture, cerebral concussion, and post-concussion syndrome. Plaintiff had to miss several months of work because of the injury, but was able to return to his position and "was qualified to and did perform the responsibilities of that position." (Compl. ¶ 21).

2

However, plaintiff alleges the Town regarded plaintiff as having a "physical or mental impairment that substantially limited one or more of Plaintiff's major life activities." (Compl. ¶ 22). Plaintiff also alleges the Town was aware that plaintiff's accident "would in all likelihood render him unable to pass the examination for the license required to be a motor equipment operator." (Id. ¶ 23).

The Resolution was to take effect as to plaintiff on February 26, 2016. However, plaintiff reported to the Highway Department starting on February 16, 2016. Plaintiff alleges "the Town deliberately assigned [him] to work that was far more labor intensive than the work performed in his former . . . position." (Compl. ¶ 25).

Plaintiff alleges he had until February 26, 2016, "to accept some undefined and/or unidentified job with the Town or variously be laid off." (Compl. ¶ 26). During this time, the Town "purported to attempt to negotiate with Kopchik and/or purportedly with his Union" (id. ¶ 28), but did not offer plaintiff a specific position that he could actually perform. The Town also did not offer him a specific salary or benefits and did not commit any offers to writing.

In addition, plaintiff considered to be "vital[ly] importan[t]" the lifetime medical benefits available were he to retire from his position as Supervisor of Buildings and Grounds, and it was unclear whether he would be entitled to those benefits were he to accept a new position offered in the Highway Department. (Compl. ¶ 31).

Thus, plaintiff retired on February 25, 2016—one day before the Resolution was to take effect as to him. Plaintiff alleges he was forced to retire and was therefore constructively discharged.[2]

---

[2] Although plaintiff draws on allegations of constructive discharge to support his retaliation and discrimination claims, he does not bring a claim for constructive discharge.

**DISCUSSION**

I.    <u>Standard of Review</u>

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. <u>Id</u>. at 678; <u>Hayden v. Paterson</u>, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Ashcroft v. Iqbal</u>, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id</u>. (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 556).

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 111 (2d Cir. 2010). The Court may nevertheless consider a document not incorporated by reference if the

---

Therefore, the Court need not determine whether plaintiff has stated a claim for constructive discharge.

4

complaint "'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)). However, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." Id. (quoting Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006)). "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." Id. (quoting Faulkner v. Beer, 463 F.3d at 134). The Court may also take judicial notice of local ordinances and regulations, Meserole St. Recycling, Inc. v. City of New York, 2007 WL 186791, at *2 (S.D.N.Y. Jan. 23, 2007).

II.     Retaliation Claims

The Town argues plaintiff's retaliation claims under the ADEA and the NYSHRL fail because plaintiff has not alleged a causal connection between the filing of the Charge and the passage of the Resolution.

The Court agrees.

Because the retaliation provisions in the ADEA and the NYSHRL "contain nearly identical language," the Court analyzes the claims together. See Nieves v. Angelo, Gordon & Co., 341 F. App'x 676, 679 (2d Cir. 2009) (summary order) ("The same standards and burdens apply to claims under both Title VII and the ADEA.").

The ADEA makes it "unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d).

To state a retaliation claim, a plaintiff must plausibly allege defendants discriminated or took an adverse employment action against him because he has opposed any unlawful

5

employment practice.  See Riddle v. Citigroup, 640 F. App'x 77, 79 (2d Cir. 2016) (summary order) (quoting Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015)).

For causation, a plaintiff must plausibly plead a connection between the adverse action and his engagement in the protected activity.  Riddle v. Citigroup, 640 F. App'x at 79.  Thus, plaintiff "must allege that the retaliation was the 'but-for' cause of the employer's adverse action, i.e., that 'the adverse action would not have occurred in the absence of the retaliatory motive.'"  Id. (quoting Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 90–91).  "It is not sufficient for the retaliation to have been a substantial or motivating factor in the employer's decision."  Id. (internal quotation marks omitted).

Causation can be shown either (i) "directly, through evidence of retaliatory animus directed against the plaintiff by the defendant," or (ii) "indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct."  Gordon v. N.Y.C. Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000).

Here, plaintiff concedes he does not allege any direct evidence of animus.  (Opp'n at 13 n.4).  In addition, plaintiff fails to allege indirect causation by alleging the protected activity was followed closely by discriminatory treatment, or by alleging disparate treatment.

First, plaintiff fails plausibly to allege that the filing of the Charge was followed closely by the passage of the Resolution.

When analyzing whether the protected activity was followed closely by discriminatory treatment, the Court measures the period starting from the date of the employer's knowledge of the protected activity.  Kim v. Columbia Univ., 460 F. App'x 23, 25 (2d Cir. 2012) (summary order).  The Second Circuit "has not drawn a bright line to define the outer limits beyond which

6

a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." Gorman-Bakos v. Cornell Coop Extension of Schenectady Cty., 252 F.3d 545, 554 (2d Cir. 2001). However, "where the protected activity took place two months prior to the alleged adverse action, and where there is nothing other than that temporal proximity invoked to establish a retaliatory intent, the causal relationship is not established." Stoddard v. Eastman Kodak Co., 309 F. App'x 475, 480 (2d Cir. 2009) (summary order).

Here, more than nine months elapsed between the time the Town became aware of the Charge on April 15, 2015, and when the Town passed the Resolution on January 28, 2016.[3] Absent other facts, this timing is insufficient to show retaliatory intent.

Plaintiff argues the Town waited until plaintiff's time to commence an age discrimination action expired before passing the Resolution. The Court finds plaintiff's argument unpersuasive.

"[W]here there are longer gaps in time between protected activity and adverse employment action, the inference of causation may be inferred from the fact that the employer was waiting for the opportune time to retaliate." Dickens v. Hudson Sheraton Corp., LLC, 167 F. Supp. 3d 499, 523 (S.D.N.Y. 2016), aff'd, 689 F. App'x 670 (2d Cir. 2017) (summary order).

Here, however, plaintiff does not allege any facts to support an inference that the Town waited to pass the Resolution until plaintiff could no longer sue on the Charge. Nor does plaintiff offer any reason for why the Town waited an additional two months after plaintiff's

---

[3] Plaintiff alleges the Town became aware of the Charge on April 15, 2015, when the EEOC directed the Town to file a response to the Charge. The Town argues it knew of the Charge before April 15, 2015, because the EEOC is required to serve a respondent with notice of an EEOC charge within ten days after filing of the charge. See 29 C.F.R. § 1601.14(a). The Court need not resolve this dispute because plaintiff fails sufficiently to allege temporal proximity under either date.

7

right to sue expired on November 30, 2015. Thus, plaintiff has failed plausibly to allege that the employer was waiting for the opportune time to retaliate. Cf. Malgieri v. Ehrenberg, 2012 WL 6647515, at *8 (S.D.N.Y. Dec. 21, 2012) (rejecting plaintiff's argument on a First Amendment retaliation claim that there was no earlier opportune time for the adverse action because "there was no impediment to [the adverse action] occurring months earlier").

Second, plaintiff fails plausibly to allege indirect causation by disparate treatment.

To establish indirect causation by disparate treatment, plaintiff must show he was treated differently from a similarly-situated employee who did not engage in a protected activity. See Richards-Byers v. N.Y.C. Dep't of Fin., 449 F. App'x 55, 57 (2d Cir. 2011) (summary order); Conklin v. Cty. of Suffolk, 859 F. Supp. 2d 415, 433–34 (E.D.N.Y. 2012). For instance, a plaintiff may allege he had the same performance evaluation and discipline standards as the other employees. See Reyes v. City Univ. of N.Y., 2007 WL 2186961, at *6 (S.D.N.Y. July 26, 2007) (citing Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997)).

Here, there are no allegations that the other buildings and grounds workers did not engage in protected activity. Likewise, plaintiff does not allege any facts showing that the other buildings and grounds workers were similarly situated. In fact, the complaint implies the opposite—that plaintiff was not similarly situated to the buildings and grounds workers, because he was the only employee with a supervisory position. Cf. Muhammad v. Juicy Couture/Liz Claiborne, Inc., 2010 WL 4032735, at *7 (S.D.N.Y. July 30, 2010) (report and recommendation) (holding plaintiff, a sales associate, was not similarly situated to a stock associate "because they held different jobs"), adopted by 2010 WL 4006159 (S.D.N.Y. Oct. 12, 2010).

Plaintiff has thus failed plausibly to allege indirect causation by disparate treatment.

Accordingly, plaintiff has failed to state retaliation claims under the ADEA and the NYSHRL.

III. Discrimination Claims

Defendant argues plaintiff's ADA and NYSHRL discrimination claims fail because plaintiff has not plausibly alleged a causal connection between his alleged disability and the passage of the Resolution.

The Court agrees.

Because "New York State disability discrimination claims are governed by the same legal standards as federal ADA claims," the Court analyzes the claims together. Rodal v. Anesthesia Grp. of Onondaga, P.C., 369 F.3d 113, 117 n.1 (2d Cir. 2004).

Title I of the ADA provides: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

"To state a claim for discrimination under the ADA, a plaintiff must allege facts which plausibly suggest, inter alia, that she 'suffered [an] adverse employment action because of [her] disability.'" Giambattista v. Am. Airlines, Inc., 584 F. App'x 23, 25 (2d Cir. 2014) (summary order) (quoting Giordano v. City of N.Y., 274 F.3d 740, 747 (2d Cir. 2001)) (alterations in original). Thus, on a motion to dismiss, "a plaintiff need only give plausible support to a minimal inference of discriminatory motivation." Dooley v. JetBlue Airways Corp., 636 F. App'x 16, 21 (2d Cir. 2015) (summary order) (quoting Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 84).

Assuming arguendo that plaintiff adequately alleges a disability and an adverse employment action, plaintiff does not allege any facts that support an inference of a causal connection between his disability and the Town's passage of the Resolution.

Plaintiff argues he was unfavorably treated as compared to the other buildings and grounds workers because of the unique effect the Resolution had on him in light of his disability.

Plaintiff's argument is unpersuasive. Whether the Resolution had a unique effect on plaintiff because of his disability is irrelevant to the issue of whether there is a causal connection between plaintiff's disability and the passage of the Resolution.

Moreover, to the extent plaintiff's argument can be construed to raise a disparate treatment claim, for the reasons stated above with respect to his retaliation claims, plaintiff has not alleged he was similarly situated to the other buildings and grounds workers.

Accordingly, plaintiff has failed to state discrimination claims under the ADA and the NYSHRL.[4]

## CONCLUSION

The Town's motion to dismiss the complaint is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #8) and close this case.

Dated: March 28, 2018
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

---

[4] Because the Court finds plaintiff fails to allege a causal connection, the Court need not address plaintiff's argument that the NYSHRL definition of "disability" is broader than the ADA definition.

10